SLEET, Judge.
J.N. appeals the order committing him to the Department of Juvenile Justice (DJJ) in a moderate-risk facility. Because the juvenile court deviated from the DJJ’s recommendation of probation without indicating its reasons for doing so, we reverse and remand for further proceedings.
I. Background
On December 7, 2012, J.N. pleaded no contest to petit theft (case 2012-4263) and grand theft (case 2012-4114). On December 13, 2012, the DJJ provided the court its predisposition report in which it recommended J.N. be committed to a low-risk facility. However, no low-risk facility would accept J.N. because of his designation as a sex offender. Therefore the DJJ reconvened and provided the court with an amended pre-disposition report in which it recommended placing J.N. on probation. On December 21, 2012, the juvenile court held a disposition hearing. The court considered the fact that the DJJ initially recommended committing J.N. to a low-risk facility and changed it to probation once it found out that no low-risk facility would accept J.N. for placement. The juvenile court adjudicated J.N. delinquent and committed him to a moderate-risk facility.
II. Analysis
This court reviews a juvenile court’s decision to disregard the DJJ’s recommenda-' tion to determine: “(1) whether the juvenile court has employed the proper legal standard ... in providing its on-the-record departure reasons; and, if so, (2) whether its stated reasons are supported by a preponderance of the competent, substantial evidence contained within the record.” *882 E.A.R. v. State, 4 So.3d 614, 638-39 (Fla.2009).
Before disregarding the DJJ’s recommended restrictiveness level assessment, the court must “identify! ] significant information that the DJJ has overlooked, failed to sufficiently consider, or misconstrued with regard to the child’s programmatic, rehabilitative needs along with the risks that the unrehabilitated child poses to the public.” Id. at 634.
In E.A.R., the Florida Supreme Court held that if a juvenile court departs from the DJJ’s recommended placement, it must:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
Simply listing “reasons” that are totally unconnected to this analysis does not explain why one restrictiveness level is . better suited for providing the juvenile offender “the most appropriate disposi-tional services in the least restrictive available setting.”
Id. at 638 (quoting § 985.03(21), Fla. Stat. (2007)). Here, the only finding the juvenile court made regarding the departure is that a low-risk facility is not available for J.N. and that “[i]f there’s any deviation at all its [sic] DJJ from its own initial determination that he needed a low risk commitment.” This does not satisfy the requirements set forth in E.A.R. Accordingly, we reverse the order committing J.N. to the DJJ and remand for the entry of an order consistent with this opinion.
Reversed and remanded.
WALLACE and KHOUZAM, JJ., Concur.